UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY C. LEE,

       Plaintiff,                            Case No. 5:06-CV-66

v.                                                  Hon. Hugh W. Brenneman, Jr.

THE UNIVERSITY OF MICHIGAN-
DEARBORN, *et al.*,

       Defendants.

_____/

**OPINION**

This action arises from disciplinary proceedings taken against plaintiff by the University of Michigan-Dearborn ("University"). Plaintiff brings three claims which can be summarized as follows. In Count One,[1] plaintiff seeks a "limited review" under Michigan's Administrative Procedures Act ("APA"), M.C.L. § 24.201 *et seq.*, of the University's disciplinary decisions rendered against her up to the time she filed suit. In Count Two, plaintiff alleges that the University's Statement of Student Rights & Code of Student Conduct ("Code") was a contract with plaintiff and that the University breached that contract. Count Three is an action under 42 U.S.C. § 1983 against the provost of the University, Dr. Robert L. Simpson, individually, for substantive and procedural due process violations of plaintiff's constitutional rights. Plaintiff seeks money damages in the latter two claims.

---

[1]Plaintiff styles her claims as First, Second and Third Cause of Action. The court will refer to these claims as Counts One, Two and Three.

Plaintiff initiated her action on or about March 13, 2006, by filing a petition for review and complaint for money damages in the Michigan Court of Claims (Ingham County Circuit Court). The action was removed to the federal court in the eastern district of Michigan on April 11, 2006, and venue was transferred to this district on April 27, 2006. The matter is now before the court on defendants' motion for summary judgment.

### I.      Background

Plaintiff's disciplinary difficulties with the University arose from a complaint filed by faculty member Liana McMillan ("Professor McMillan") on October 31, 2005. *See* McMillan Compl. attached to defendants' brief as Exh. C. In this complaint, Professor McMillan alleged that: plaintiff made obscene gestures at her; filmed her with a video camera "from a few feet away;" confronted her at the library requiring the intervention of the campus security; sent her slanderous e-mail; and stalked her. *Id.* In addition, Professor McMillan's complaint referenced previous incidents in 2004 when plaintiff submitted assignments which contained inappropriate comments, including one with sexual content, in which plaintiff explicitly stated that she was attracted to the professor and in which she described sexual acts. *Id.*

The University's Judicial Council summarized the allegations as follows:

> On October 31, 2005, a report was received by the Judicial Council from Liana McMillan . . . alleging that Mary C. Lee did on [sic] intermittently since Fall 2004 and specifically on October 25, 2005 engage in the following inappropriate conduct: (1) Interfering with Liana McMillan's University business, i.e., studying, teaching, administration; (2) Harassment, i.e., stalking that involved deliberate interference or a deliberate threat to Liana McMillan; (3) Failing to comply with the directions of University officials and campus safety; (4) Violating published University policies, including those regarding affirmative action.

Case Record of Judicial System Actions, attached to defendants' brief as Exh. D.

A hearing by the Non-Academic Conduct Board was held on December 2, 2005. Notice of the hearing was provided to plaintiff on November 10, 2005. *Id.* Both plaintiff and the professor, as well as several other witnesses, appeared at the hearing and testified. Among other things, the evidence established that the professor had obtained a Personal Protection Order from the Wayne County Circuit Court in the Fall of 2005, which the court had subsequently, despite plaintiff's motion, declined to set aside. *See* Case Record of Non-Academic Conduct Hearing dated December 16, 2005.

Upon completion of the proceedings, the University's Hearing Board found plaintiff guilty of the following violations of the University's Code:

- B.3. Interfering with Liana McMillan's University business, i.e., studying, teaching, administration;

- B.5. Harassment, i.e., stalking that involved deliberate interference or a deliberate threat to Liana McMillan;

- B.7. Failing to comply with the directions of University officials and campus safety;

- B.14. Violating published University policies, including those regarding affirmative action.

*Id.* It was the determination of the Hearing Board on December 16, 2005, that plaintiff be expelled.

Plaintiff appealed the decision of the Hearing Board to an appeals board on January 5, 2006, and submitted a brief in support of her appeal. The appeals board, referred to as the Code Appeals Board, met on February 2, 2006, to consider plaintiff's appeal. It concluded that the decision of the Hearing Board was not arbitrary and capricious, and the procedural errors pointed out by plaintiff did not deny plaintiff a fair hearing. It also considered additional evidence offered by plaintiff and determined that this evidence was insufficient to require the matter to be remanded to the Hearing Board.

Notwithstanding these findings, the Code Appeals Board also found the sanction imposed by the Hearing Board was excessive. It therefore reduced the sanction to "Expulsion in Abeyance" with the following conditions:

> First, you will have absolutely no contact with Professor McMillan, including but not limited to, verbal, written, electronic or other contact. Further, you are forbidden from taking any classes with Professor McMillan at the University of Michigan-Dearborn. In the event that only Professor McMillan teaches a course required for graduation, you must make alternative arrangements for your academic advisor and department chair.
>
> Second, you are to seek counseling through the UM-Dearborn Counseling and Support Services within two weeks of receipt of this letter by contacting Dr. David Schroat, director of Counseling and Support Services.

Plaintiff was cautioned that if she violated these conditions, she would be expelled. The Board concluded that while it did not condone her actions, it felt that her past record at the University warranted a second chance. It added, "it is the Board's sincere hope that you can act in accordance with the Board's sanction and in the process complete all the requirements for the degree that you are currently pursuing." Letter of Provost Robert L. Simpson, dated February 16, 2006. In short, plaintiff was not expelled, but was allowed to continue to take classes at the University and complete her degree, provided she cease contact with one particular individual and take some counseling.

Plaintiff was not satisfied with this decision and requested a re-hearing on two grounds:

> 1. Specify procedural errors and interpretation of the University regulations occurred that were so substantial as to effectively deny the respondent a fair hearing.
>
> 2. The decision of the Hearing Board was arbitrary and capricious.

Letter of Plaintiff dated March 1, 2006.

4

Dr. Simpson denied the request to remand and advised plaintiff that "[t]he Code Appeals Board decision was final and not subject to review, except by direct petition to the Chancellor of the University of Michigan-Dearborn for executive clemency." Letter of Provost Simpson dated March 2, 2006. It does not appear that plaintiff filed such a direct petition. Plaintiff then filed the present action with the Michigan Court of Claims.

Plaintiff was subsequently expelled from the University for violating the no contact provision imposed by the Code Appeals Board, while this suit was pending in federal court,. A letter from the University's Vice Chancellor Stanley E. Henderson to plaintiff, dated June 8, 2006, informed her:

> On May 22, 2006, you sent an electronic message to Eric Bolling, copying a group of individuals, including Professor McMillan. In an electronic message of May 23, 2006, after Mr. Bolling responded to your message of the day before, you again copied a group of individuals, including Professor McMillan.
>
> In light of your failure to meet the condition stipulating no contact with Professor McMillan, I must inform you that you are hereby expelled from the University of Michigan-Dearborn, effective immediately.

Plaintiff has never sought to amend her complaint to add allegations pertaining to her subsequent expulsion.

The parties were directed to file cross-motions for summary judgment. *See* Preliminary Case Management Order dated June 9, 2006. Defendants complied and filed a motion for summary judgment, to which plaintiff responded merely by essentially restating her claims from the original complaint.[2] Plaintiff did not file a cross-motion. This matter is now before the court on defendants' motion for summary judgment.

---

[2]In her responsive brief, plaintiff does make a reference to her subsequent expulsion from the University, but she has not made this a claim in her case. See discussion *infra* at III.A.

## II.     Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis,* 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case. Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland,* 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.,* 224 F.3d 797, 800 (6th Cir. 2000).

## III.     Discussion

Plaintiff has alleged claims based upon both state and federal law. The court will address the federal claim first.

### A.     Plaintiff's federal claim against Dr. Simpson (Count Three)

In her third count, plaintiff seeks relief against Dr. Simpson pursuant to 42 U.S.C. § 1983, which confers a right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the federal Constitution laws. *Burnett v. Grattan,* 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian,* 96 F.3d 159, 161 (6th Cir. 1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by

the Constitution and laws of the United States, and (2) that the defendant deprived her of this federal right under color of law. *Jones v. Duncan,* 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff has alleged that Dr. Simpson, now the former provost of the University, violated § 1983 by upholding the University's decision of the Code Appeal Board "despite the substantive and procedural due process violations of [plaintiff's] constitutional rights." Defendants contend that Dr. Simpson is entitled to qualified immunity. The court agrees.

Qualified immunity from civil actions for damages is not a mere defense to liability, but rather immunity from suit and an entitlement not to stand trial. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs, 475* U.S. 335, 341 (1986).

The Sixth Circuit applies a three-step inquiry to determine the existence of qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light more favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Meals v. City of Memphis, Tenn.,* – F.3d – 2007 WL 1989016 at *7 (6th Cr. 2007), *citing Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*). When a defendant raises the issue of

7

qualified immunity in a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris,* – U.S. – 127 S. Ct. 1774-75 (2007). This typically requires the court to adopt "the plaintiff's versions of the facts." *Id.* At 1775.

Here, plaintiff contends that Dr. Simpson violated her procedural and substantive due process rights under the United States Constitution when he upheld the decision of the Hearing Board and denied plaintiff's request to reconvene the Code of Appeals Board. Complaint; Response to Defendants' Motion for Summary Judgment. The court concludes that Dr. Simpson is entitled to qualified immunity for the reasons discussed below.

**1.     Substantive Due Process**

Plaintiff claims that Dr. Simpson violated her substantive due process rights. However, the allegations against the provost arising from his participation in a college disciplinary proceeding simply do not rise to the level of rights normally protected by substantive due process.

"The substantive component of the Due Process Clause protects 'fundamental rights' that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.' *Palko v. Conn.,* 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937)." *Doe v. Michigan Dept. of State Police,* 490 F.3d 491, 499 (6th Cir. 2007). These fundamental rights which are deeply rooted in this nation's history and tradition, include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg,* 521 U.S. 702, 720 (1997) (citations omitted); *Harris v. City of Akron,* 20 F.3d. 1396, 1405 (6th Cir. 1994). "The Supreme Court has cautioned, however, that it has 'always been reluctant to expand the concept of

substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Doe,* 490 F.3d at 500, *quoting Glucksberg,* 521 U.S. at 720.

While a high school student is entitled to procedural due process in pursuit of a free public education, a student's right to attend a public high school is not a "fundamental right" for purposes of substantive due process analysis. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 33-37 (1973); *Seal v. Morgan,* 229 F.3d. 567, 575 (6th Cir. 2000). A post-secondary student such as plaintiff has even a lesser claim that her attendance at a college or university is a fundamental right. *See, Bell v. Ohio State University,* 351 F.3d 420, 251 (6th Cir. 2003) (in the absence of an equal protection violation there is "no basis for finding that a medical student's interest in continuing her medical school education is protected by substantive due process"); *Hill v. Board of Trustees of Michigan State University,* 182 F.Supp. 2d, 621, 626-27 (W.D. Mich. 2001) ("The Sixth Circuit has recognized that the right to attend public high school is not a fundamental right for purposes of substantive due process analysis [citations omitted]. The right to a public college education and the right to receive notice prior to suspension are even less fundamental"). *See, also, e.g., McGee v. Schoolcraft Community College,* 167 Fed.Appx. 429 at 437 (6th Cir. 2006) ("[t]he interests [of a college student] protected by substantive due process are of course much narrower than those protected by procedural due process.").

In the absence of a basis for finding that plaintiff's interest in continuing her college education is protected by substantive due process, Dr. Simpson is entitled to qualified immunity on plaintiff's claim that he violated her substantive due process rights. As to this claim, she cannot satisfy any part of the Sixth Circuit's three-step test in *Meals, supra.*

### 2. **Procedural Due Process**

To prevail on a procedural due process claim, the plaintiff must first establish the existence of a constitutionally protected life, liberty or property interest. *Board of Regions v. Roth,* 408 U.S. 564, 569-70 (1972). Then the plaintiff must establish that the government deprived her of that protected interest without due process of law. *Board of Curators of University of Missouri v. Horwitz,* 435 U.S 78, 82 (1978). Usually in these cases, the protected interest at issue is an alleged property interest in the plaintiff's continued enrollment at the public university, a matter not without some controversy as will be discussed below. In the present case, however, the court does not need to reach that issue. Dr. Simpson is entitled to judgment as a matter of law because the undisputed facts show that he did not ultimately deprive plaintiff of that interest. *See, e.g., McGee,* 167 Fed. App. at 437. At the time plaintiff brought the action in this court, she had not been expelled from the University, nor even suspended. Plaintiff has not alleged a violation by Dr. Simpson of her right to continued enrollment in a public university (assuming, *arguendo,* the same to be a protected property or liberty interest), nor could she, because she had not been deprived of any such interest when she filed her lawsuit.

The procedure that plaintiff asserts was constitutionally inadequate during Dr. Simpson's involvement in this matter resulted only in plaintiff being placed on a probationary status with minimal restriction. She was allowed to remain at the University and to take all future classes necessary to graduate. Her expulsion only occurred after additional events transpired to which Dr. Simpson was not a party. Plaintiff has made no attempt to amend her complaint to make her actual expulsion or these new events part of this lawsuit.

Plaintiff has, in effect, chosen to ground her contention that she was afforded inadequate procedural due process on the process itself. An expectation of receiving process is not, without more, a liberty interest protected by the due process clause, since process is not an end in itself. *Olin v. Wakinekona,* 461 U.S. 238, 250 (1983). "Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Id.* As succinctly stated by the Sixth Circuit, "There is no due process right to due process." *Bell-Bay v. Luna,* 142 F.3d 431 (6th Cir. 1998).

Plaintiff is claiming nothing more in Count 3 than that the provost upheld the improper use of the University's disciplinary procedural rules. But a state's failure to comply with its own law, rule or regulation, does not by itself state a claim under § 1983. *Smith v. Freland,* 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem,* 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters,* 753 F.2d 498, 508-09 (6th Cir. 1985). (§ 1983 is addressed to remedying violations of federal law, not state law.) Thus, the facts viewed in the light most favorable to the plaintiff fail to show that a constitutional violation has occurred. *Meals, supra.*

Even if plaintiff had amended her complaint to complain of her actual expulsion, such a claim could not be brought against this particular defendant because there is absolutely no evidence of record that he (or the Code Appeals Board) was involved in the ultimate decision to expel plaintiff following her subsequent misbehavior. The only protected liberty or property interest plaintiff can try to assert against Dr. Simpson, the sole defendant on the federal claim, is one in the due process itself, and as noted "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause," *Olin, supra,* at 250 and n. 12.

11

### 3. Constitutional Rights Not Clearly Established

Assuming for the sake of argument, however, that plaintiff's alleged denial of adequate procedural due process could be construed as a constitutionally protected interest in and of itself, or that the same was part of a protected liberty or property interest plaintiff had in her continued enrollment at a public university, or even that she had been denied substantive due process, plaintiff cannot show that any of these supposed violations involved a clearly established constitutional right of which a reasonable person would have known. This is the second step in the *Meals* test.

It is undisputed that where the state provides a free public education, young school children have a property interest in that education and are entitled to due process before they can be suspended. As the Supreme Court determined in *Goss v. Lopez*, 419 U.S. 565 (1975), where the state provides for the free public education of its children at the secondary level, "the State is constrained to recognize a student's interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss*, 419 U.S. at 567, 574.

Whether a student has a due process interest in attending a post-secondary educational institution, however, is an open question. Some courts have found that a student at a public university has a property or liberty interest in continuing studies at the institution. *See, e.g., Woodis v. Westark Community College*, 160 F.3d 435, 440 (8th Cir. 1999) (cited *Goss* in finding that procedural due process applied to nursing student in disciplinary action by community college); *Gorman v. University of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988) (citing *Goss* and stating that a university student "facing expulsion or suspension from a public educational institution is entitled

12

to the protections of due process"); *Hart v. Ferris State College*, 557 F. Supp. 1379, 1382 (W.D. Mich. 1983) relying on *Goss* to conclude that "the threat of suspension or expulsion implicates [a college student's] property and liberty interests in public education and reputation, and that such interests are within the purview of the due process clause of the Fourteenth Amendment," although noting that the question of whether the student had a right to due process was undisputed in that case.

Other courts have not followed this line of reasoning. *See, e.g., Lee v. Board of Trustees of Western Illinois University*, No. 98-4038, 2000 WL 14419 (7th Cir. Jan. 5, 2000) ("The plaintiffs conclude, without analysis, that children have a property interest in attending elementary and secondary public schools and so necessarily there is a similar interest in attending public universities. But we have never decided this question, and there are obvious differences between compulsory education and post-secondary programs") (citation omitted); *Osteen v. Henley*, 13 F.3d 221, 223 (7th Cir. 1993) ("it is an open question in this circuit whether a college student as distinct from an elementary or high school student has a property right in continued attendance"); *Tigrett v. Rector and Visitors of University of Virginia*, 290 F.3d 620, 627 (4th Cir. 2002) ("[t]he Supreme Court has assumed, without actually deciding, that university students possess a 'constitutionally protected property right' in their continued enrollment in a university").

There is even disagreement over this matter within this circuit. Some courts have cited the opinion in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985), as establishing that a public university student has an interest in continued enrollment. *See, e.g., Picozzi v. Sandalow*, 623 F. Supp. 1571, 1576 (E.D. Mich. 1986) (citing *Ewing* for the proposition that "[a] public university student has a protected interest in continuing his studies"). However, the

13

Supreme Court's opinion in *Ewing* is itself based upon the assumption that a university student had a property interest which "gave rise to a substantive right under the Due Process Clause to continued enrollment from arbitrary state action." *Ewing*, 474 U.S. at 223. Given the Supreme Court's reasoning in *Ewing*, one district court attempted to read the underlying Sixth Circuit decision in *Ewing v. Board of Regents of University of Michigan*, 742 F.2d 913 (6th Cir. 1984), *rev'd*, 474 U.S. 214 (1985), as establishing that a state university student has both a substantive and procedural due process right in continuing his studies. *Megenity v. Stenger*, 27 F.3d 1120, 1123 (6th Cir. 1994). But the Sixth Circuit itself has backed away from this approach, concluding that although the Supreme Court "did not necessarily reject the central holding of our decision" the trial court's reliance on the Sixth Circuit's *Ewing* opinion was "misplaced" and "tenuous authority." *Id*.

In *Flaim v. Medical College of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005), the Sixth Circuit stated that "[i]n this Circuit, we have held that the Due Process Clause is implicated by higher education disciplinary decisions." This conclusion was based upon the Sixth Circuit's four-sentence, unpublished affirmance of *Jaksa v. Regents of University of Michigan*, 597 F.Supp. 1245 (E.D.Mich.1984), *aff'd* 787 F.2d 590 (6th Cir. 1986).[3] The court noted that "federal district and

---

[3]The Sixth Circuit's affirmance provides as follows:

Plaintiff Christopher J. Jaksa appeals the summary judgment for defendant Regents of the University of Michigan and its President and Dean in this action brought under 42 U.S.C. § 1983 alleging the denial of procedural due process in regards to an academic disciplinary hearing convened for the purpose of determining plaintiff's guilt or innocence to charges of cheating. The district court held that although plaintiff asserted a constitutionally protected interest, he received all the process which was constitutionally due.

Upon consideration of the briefs and record herein and after oral argument, the court is of the opinion that the findings of the district judge are not clearly erroneous and, further, that it has not been shown that the district judge

circuit courts, as well as numerous state courts . . .have themselves reviewed countless disciplinary due process claims brought by students and faculty." *Flaim*, 418 F.3d at 635. However, in a more recent opinion, *McGee v. Schoolcraft Community College*, 167 Fed.Appx. 429 (6th Cir. 2006), the Sixth Circuit reached a different result, flatly stating that the status of the law in this area "has not been resolved":

> The issue of whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process has not been resolved. Courts have avoided this issue where possible by assuming for the sake of argument that such an interest exists.

*McGee*, 167 Fed. Appx at 437.

Based on the foregoing, this court finds that plaintiff had no clearly established constitutional right to substantive or procedural due process in her disciplinary proceeding at the University based upon her expectation of continued enrollment, much less her expectation of a certain type of due process itself. As the Supreme Court stated in *Anderson v. Creighton*, 483 U.S. 635, 640 (1987):

> the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Here, although some courts have concluded that post-secondary students, such as plaintiff, have procedural or substantive due process rights protected by the federal constitution, the existence and

---

> misapplied the applicable law. Accordingly, the judgment of the district court is AFFIRMED for the reasons stated by Chief Judge Feikens in his memorandum opinion filed November 21, 1984, and reported at 597 F. Supp. 1245 (1984).

*Jaska v. Regents of University of Michigan*, No. 85-1078, 1986 WL 16012 (6th Cir. March 20, 1986).

"contours" of those rights appear to be an issue of judicial debate, even between different panels at the Sixth Circuit. "If judges thus disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999).

For all of these reasons, Dr. Simpson is entitled to qualified immunity on plaintiff's claims that he violated her procedural due process rights under the federal constitution.

### B. Plaintiff's state law claims

Plaintiff's first two claims arise under state law. The court originally exercised its supplemental jurisdiction over plaintiff's state law claims because those claims were intimately related to the alleged § 1983 violations. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims on the action within such original jurisdiction that they form a part of the same case or controversy"). Now that plaintiff no longer has a federal claim pending in this action, the court must determine whether to exercise its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank,* 137 F.3d 885, 892-893 (6th Cir. 1998); 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction"). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claim." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254-1255 (6th Cir. 1996).

Plaintiff's attempt to review this matter under the state APA is an exception to this general rule, since the parties have now fully argued this issue before the court, and it appears

previous Sixth Circuit law is dispositive. There can no longer be serious contention that the APA is applicable to this proceeding.

Plaintiff seeks to have this court review the University's decisions pursuant to the state APA. Defendants correctly contend that the APA does not apply to the administrative decisions made by the University. The APA provides that when a person aggrieved by a final decision of a state agency has exhausted all administrative remedies available within the agency, they may obtain direct review by the courts. MCL § 24.301. The APA, however, specifically excludes a university's governing board as an "agency" subject to the APA. The APA states:

> . . . . <u>Agency does not include</u> an agency in the legislative or judicial branch of state government, the governor, <u>an agency having direct governing control over an institution of higher education</u>, the state civil service commission, or an association of insurers created under the Insurance Code of 1956. . ."

MCL § 24.203(2)(emphasis added). Indeed, the University of Michigan is one of three universities specifically established by the Michigan Constitution. Mich. Const. of 1963. Article VIII, § 5; *See also* MCL § 390.1. Michigan is one of the few states to give independent constitutional status to its universities. *Regents of the University of Michigan v. State,* 395 Mich. 52, 74, 235, NW 2d 1, 11 (1995). Relying on § 24.203(2), the Sixth Circuit has concluded that the state APA does not apply to the University of Michigan. *See Crook v. Baker,* 813 F.2d 88, n. 4 (6th Cir. 1987) ("the Michigan Administrative Procedures Act, Mich. Comp. Laws Ann. §§ 24.201 *et seq.,* does not apply to the University. *Id.* § 24.203(2)"). Therefore, there is no basis for this court to review the University's decisions under the state's APA. Defendants are entitled to summary judgment on Count One.

Plaintiff's remaining state claim (Count Two) asserts that a contractual relationship exists between her and the University and that the University breached this contract when it conducted its disciplinary proceedings.

It is unclear whether any such contractual relationship exists in Michigan. The Michigan Court of Appeals has issued conflicting opinions on whether a contract exists between a university and a student matriculating at that university. *See Carlton v. The Trustees of the University of Detroit Mercy,* No. 225926 (2002) WL 533885 at *3 (Mich. App. April 9, 2002) (unpublished opinion) (implied contract exists) (*Tapp v. Western Michigan University,* No. 211725, 1999 WL 33326770 at *3 (Mich. App. Dec. 28, 1999) (unpublished opinion) ("[c]ourts have rejected a rigid application of contract law in the area of student-university relationships"); *Amaya v. Mott Community College,* No. 186755, 1997 WL 33353479 (Mich. App. March 7, 1997) (unpublished opinion) (no contract exists); *Cuddihy v. Wayne State University Board of Governors,* 163 Mich. App. 153, 157, 413 N.W. 2d 692 (Mich. App. 1987) (court cited *Ewing* for the proposition that a student had no cause of action against the university under a theory of promissory estoppel). "Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts. This is particularly true if the federal claim on which the state claim hangs has been dismissed." *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 306 (2nd Cir. 2003).

Accordingly, plaintiff's remaining state law claim asserted in Count Two will be remanded to the Michigan Court of Claims.

**IV.     Conclusion**

Defendants' motion for summary judgment (docket no. 20) will be **GRANTED** as to Counts One and Three and **DENIED** as to Count Two, and Counts One and Three will be **DISMISSED.**

Plaintiff's remaining breach of contract claims asserted in Count Two will be **REMANDED** to the Michigan Court of Claims.

An order consistent with this opinion shall issue forthwith.


Dated:  September 27, 2007				/s/ Hugh W. Brenneman, Jr.
						HUGH W. BRENNEMAN, JR.
						United States Magistrate Judge